UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JACK BUTLER, ALEX HARPER, and CASSAUNDRA MAXWELL, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

WALMART INC., a Delaware corporation, BEST BUY CO., INC., a Minnesota corporation, BEST BUY STORES, L.P., a Virginia company, and APPLE INC., a California corporation,

Defendants.

CASE NO. CV25-5445-BHS

ORDER

THIS MATTER is before the Court on the following motions: (1) defendants Walmart Inc., Best Buy Co., Inc., Best Buy Stores L.P., and Apple Inc.'s Rule 12(b)(6) motion to dismiss, Dkt. 27; (2) Defendants' related request for judicial notice or incorporation by reference of their attached exhibits, including iPhone exterior packaging photographs, portions of the Telephone Buyers' Protection Act ("TBPA") legislative history, and screenshots of Defendants' online webpages, Dkt. 28; and (3) plaintiffs Jack

Butler, Alex Harper, and Cassaundra Maxwell's unopposed request for judicial notice of the complete TBPA legislative history, Dkt. 43.

This is a putative consumer class action case. Dkt. 20 at 2. Apple is the manufacturer, distributor, marketer and seller of the iPhone. Dkt. 41 at 10. The remaining defendants are large iPhone retailers in Washington. *Id*. Plaintiffs[1] purchased iPhones from Washington retail stores in 2023 and 2024. *Id.* They allege that Defendants failed to provide the required TBPA disclosures at any point during the sales process. *Id.* Plaintiffs assert that if Defendants had done so, Plaintiffs either would not have purchased their iPhones or paid less. *Id.*

In July 2025, Plaintiffs sued on behalf of "[a]ll persons who purchased [iPhones] for personal use in Washington within the applicable statute of limitations." Dkt. 20 at 13. Plaintiffs allege that Defendants violated Washington's TBPA, RCW 19.130 *et seq*., and Consumer Protection Act ("CPA"), RCW 19.86 *et seq*., by selling Apple iPhone devices without providing certain warranty and repair disclosures. *Id.* at 17–18. Plaintiffs seek monetary damages and injunctive relief, including disgorgement, restitution, and an injunction to enjoin future allegedly unlawful practices and to order Defendants to engage in a corrective advertising campaign. *Id.* at 20.

Defendants move to dismiss without leave to amend, arguing that the TBPA was enacted in 1984 to regulate the sale of wired telephone equipment after the breakup of

---

[1] Plaintiff Harper purchased an iPhone 16 Pro Max online at BestBuy.com in 2024, not in-store as he alleged in his complaint. Dkt. 31 at 6. On November 18, 2025, the Court granted Best Buy Co., Inc. and Best Buy Stores, L.P.'s motion to compel arbitration. Dkt. 48. Harper's claims against Best Buy are stayed pending arbitration. *Id*.

AT&T, and that it does not apply to iPhones or other wireless devices. Dkt. 27 at 8. They argue that the TBPA either excludes an iPhone as "radio equipment," RCW 19.130.040, or that an iPhone is not a "telephone handsets or keysets" as contemplated by the TBPA. *Id.* at 15. Defendants also argue that even if the TBPA applies to iPhones, the Defendants' websites satisfy the TBPA's disclosure requirements by extensively publishing all iPhone warranty and repair information. *Id.* at 19–23. Defendants contend that the CPA claim rises and falls with the deficient TBPA claim. *Id.* at 25.

Defendants also argue that Plaintiffs' claims for restitution, disgorgement, and injunctive relief should be dismissed because the Plaintiffs have an adequate remedy at law, *i.e*., monetary damages. *Id.* at 27 (citing *Sonner v. Premier Nutrition Corp*., 971 F.3d 834, 844 (9th Cir. 2020)). They assert that without a plausible threat of repeated future injury, Plaintiffs lack standing to seek injunctive relief. *Id.* at 28–29.

Plaintiffs counter that the TBPA's consumer protections extend to modern smartphones, including iPhones. Dkt. 41 at 13. They assert that an iPhone performs the core function of a telephone: initiating and receiving voice calls over a fully integrated public telephone network. *Id.* They further assert that Defendants' online disclosures, by themselves, are insufficient. *Id.* at 22. They contend that the statute requires Defendants to direct iPhone buyers to Defendants' online disclosures prior to purchase, either through labeling on the physical product, its packaging, or in-store signage. *Id.* Plaintiffs contend that assessing whether Defendants meet the TBPA's disclosure requirements is a question of fact not appropriate for determination on a motion to dismiss. *Id.* at 23–24.

In the alternative, Plaintiffs argue that the Court should certify questions to the Washington State Supreme Court, including whether iPhones qualify as "radio equipment" or "telephone handsets" within the meaning of the TBPA, and whether online disclosures are sufficient to satisfy the TBPA's requirement that information be clearly disclosed prior to sale. *Id.* at 26.

Lastly, Plaintiffs contend that the CPA's plain language clearly permits both monetary damages and injunctive relief. *Id.* at 29. They contend that their inability to rely on iPhone advertising and labeling when purchasing an iPhone constitutes imminent harm sufficient to establish Article III standing for injunctive relief. *Id.*

The issues are discussed in turn.

## I.    DISCUSSION

### A.    Rule 12(b)(6) Legal Standard

Dismissal under Federal Rule of Civil Procedure 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Although courts must accept as true the complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion to dismiss. *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir.

2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

**B. Defendants' exhibits 1-16 are incorporated by reference into the Amended Complaint or subject to judicial notice.**

As an initial matter, the Court must determine which materials it may consider when evaluating Defendants' motion to dismiss. Generally, a court may not consider any material outside the pleadings in ruling on a Rule 12 motion, or the motion is converted to one for summary judgment (and the opposing party is entitled to respond to the new motion). *See* Fed. R. Civ. P. 12(b)(6). There are two exceptions to this rule.

First, the Court may consider material submitted as part of the complaint, or upon which the complaint necessarily relies, if the material's authenticity is not contested. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (A document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."). Second, under Federal Rule of Evidence 201, the Court may take judicial notice of matters of public record. *Id*.

In support of their motion to dismiss, Defendants request judicial notice of selections of the TBPA's legislative history. Dkt. 28. In response, Plaintiffs request judicial notice of the TBPA's full legislative history. Dkt. 43. Legislative history is a proper subject of judicial notice. *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012). The parties' requests for judicial notice of the TBPA's legislative history are **GRANTED**.

Defendants' request that the Court consider iPhone Exterior Packaging photographs, Dkt. 29, Exs. 1–2, and an Apple iPhone repair webpage, Dkt. 30, Ex. 5, as incorporated by reference into the amended complaint. Dkt. 28. Plaintiffs do not oppose this request.[2] Defendants' request to incorporate exhibits 1, 2, and 5, is **GRANTED**.

Defendants also request that the Court take judicial notice of their publicly accessible webpages containing online warranty and repair information as they existed at the time Plaintiffs purchased their iPhones, exhibits 4 through 16. *Id.* They contend that Defendants' online disclosures are relevant to rebut Plaintiffs' assertions that Defendants failed to disclose information required by the TBPA. *Id.* at (citing Am. Compl., Dkt. 20 at 7). Defendants clarify, however, that they seek judicial notice only of the "existence of the documents themselves," and not for "the truth of the matters asserted" therein. *Id.* at 6–7 (citing *Rindal v. Ferguson*, No. 2:24-cv-00890-TL, 2025 WL 723610, at *3 (W.D. Wash. Mar. 6, 2025)).

[2] Plaintiffs dispute that the Apple iPhone repair webpage, exhibit 5, is subject to *judicial notice*, but do not oppose its incorporation by reference. Dkt. 44.

Plaintiffs argue that the webpages are irrelevant because they were not "clearly disclosed" to consumers prior to their iPhone purchase. Dkt. 44 at 3. They contend that the webpages provide no "guarantee of accuracy," and are "inherently self-serving, subject to change, and outside adversarial testing." *Id.* at 4.

Plaintiffs' arguments are unpersuasive. Plaintiffs themselves incorporate and rely on Defendants' online materials in support of their complaint, including a screenshot of Apple's online warranty and webpage estimating iPhone repair costs. *See* Dkt. 20 at 9–11, Ex. C. Plaintiffs do not contend that the Defendants' webpage exhibits are inaccurate or misleading, and Defendants do not seek judicial notice of the truthfulness of the websites' content. Rather, Defendants seek judicial notice only of the fact that these online disclosures were published and publicly available at the time the Plaintiffs purchased their iPhones. *See Wilson v. Playtika, Ltd*., 349 F. Supp. 3d 1028, 1042 (W.D. Wash. 2018) (holding that the Court can take judicial notice of the terms because they derive from a publicly accessible website). Defendants' online disclosures at the time of purchase is directly relevant to Plaintiffs' claims of insufficient notice.

Defendants' request that the Court take judicial notice of exhibits 4-16 is **GRANTED**.

Accordingly, both parties' requests for judicial notice and incorporation by reference of their submitted exhibits, Dkts. 28 and 43, are **GRANTED**.

**C. Plaintiffs fail to state a TBPA claim**

Defendants' motion to dismiss primarily presents two issues of TBPA statutory interpretation: (1) whether iPhones are excluded as "radio equipment"; and (2) whether

cell phones are "telephone handsets or keysets" within the meaning of the TBPA. Because no Washington court has ever interpreted the TBPA, these questions are a matter of first impression.[3]

When interpreting a state statute, a federal court must interpret the law as would the state's highest court. *In re Kolb*, 326 F.3d 1030, 1037 (9th Cir. 2003). In Washington, the Court begins with the plain language of the statute. *State v. Armendariz*, 160 Wn.2d 106, 110 (2007). When a statute's meaning is plain on its face, the Court "must give effect to that plain meaning as an expression of legislative intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9–10, 43 P.3d 4 (2002). Plain meaning is derived from the context of the statute, related provisions, and the larger statutory scheme. *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354 (2010). When a statutory term is undefined, courts apply its plain and ordinary meaning unless the legislature indicates a contrary intent. *Id.* If the statute is ambiguous, the Court may consider legislative history and the "circumstances surrounding the enactment of the statute." *Five Corners Family Farmers*

[3] Plaintiffs alternatively argue that the Court should certify these questions to the Washington State Supreme Court as "not settled" matters of Washington law. Dkt. 41 at 26. A federal court may certify questions of state law to that state's highest court to obtain "authoritative answers to unclear questions of state law." *Micomonaco v. State of Wash*., 45 F.3d 316, 322 (9th Cir. 1995). However, certification is "not appropriate where the state court is in no better position than the federal court to interpret the state statute." *Id.* The decision whether to certify rests within the discretion of the district court. *Id.*

The Court applies the same principles of statutory interpretation as that of the Washington State Supreme Court. Because these issues present a straightforward application of statutory interpretation, certification is unwarranted. Plaintiffs' alternate request for certification is **DENIED**.

*v. State*, 173 Wn.2d 296, 306, 268 P.3d 892 (2011). A statute is ambiguous if it is susceptible to two or more reasonable interpretations. *Id*.

**1. Washington's Telephone Buyers' Protection Act**

The TBPA was enacted in 1984 in response to federal deregulation of the telephone industry and the breakup of the AT&T telephone company monopoly. *See* RCW 19.130.010. For the first time, consumers were no longer required to purchase telephone equipment from AT&T and could instead shop for equipment from numerous competitive sources and select the equipment best suited to their needs. RCW 19.130.010; *see* S.B. Rep. on ENGROSSED SUBSTITUTE S.B. 4560 (Wash. 1984), Dkt. 42-1 at 38 (explaining that "[c]onsumers who formerly purchased equipment from a monopoly telephone company now may purchase equipment from numerous sources"); *CallerID4u, Inc. v. MCI Commc'n Servs. Inc*., 880 F.3d 1048, 1055 (9th Cir. 2018) (explaining that federal antitrust lawsuit resulted in divestiture of AT&T). Recognizing that competitive markets function most effectively when consumers have adequate information about product capabilities and reliability, the legislature enacted the TBPA to require specific pre-sale disclosures. *Id.* These disclosure requirements were intended "to benefit both buyers and sellers of telephone and other telecommunications equipment and [serve] the public interest." *Id*.

The TBPA required sellers of "telephone handsets or keysets" to disclose at the time of sale various information about how it worked, warranty information, and what it might cost to repair:

> Any person offering for sale or selling new or reconditioned *telephone handsets or keysets* . . . shall clearly disclose prior to sale by methods which may include posting of notice or printing on the equipment package the following:
> (1) Whether the equipment uses pulse, tone, pulse-or-tone, or other signaling methods, and a general description of the services that can be accessed through the equipment;
> (2) Whether the equipment is registered with the federal communications commission under the applicable federal regulations;
> (3) The person responsible for repair of the equipment;
> (4) Standard repair charges, if any; and
> (5) The terms of any written warranty offered with the equipment.

RCW 19.130.020 (emphasis added).

The statute excludes several categories of equipment from these pre-sale disclosure requirements, including (1) "radio equipment used for land, marine, or air mobile service, or any like service, whether or not such equipment is capable of interconnection by manual or automatic means to a telephone line," RCW 19.130.040; and (2) "equipment not intended for connection to the telephone network," RCW 19.130.050.

A TBPA violation is a per se CPA violation and presumes statutory damages of up to $100. RCW 19.130.060. The TBPA does not define the terms described above, and despite the dramatically different technological landscape, it has never been amended.

**2. An iPhone is radio equipment under the TBPA**

Defendants argue that iPhones, which operate wirelessly using radio waves, and which do not connect directly to a landline telephone network, are exempted as "radio equipment" from the TBPA. Dkt. 27 at 15. They contend that the TBPA was enacted only to regulate the types of equipment directly affected by the breakup of AT&T and was not

intended to "evolve in perpetuity to cover devices with 'far greater complexities.'" Dkt. 46 at 7 (quoting Dkt. 41 at 8). Defendants argue that because iPhones rely on radio waves, a fundamentally different means of communication from traditional telephone networks, they are not subject to the TBPA's pre-sale disclosure requirements. *Id.* at 16.

Plaintiffs contend that the term "radio equipment" is meant to be construed narrowly and include only "specialized, two-way radio communication devices distinct from general-purpose telephones." Dkt. 41 at 12. They argue that "land, marine, or air mobile service[s]" each have a specific regulatory meaning and are primarily "radio communication systems," not devices that connect users to the general telephone network in the way that iPhones do. *Id.* at 12, 13.

Courts must interpret statutory terms consistent with their "ordinary, contemporary, common meaning." *Fagner v. Heckler*, 779 F.2d 541, 543 (9th Cir. 1985). In 1984, "radio" was defined as the "*wireless* transmission and reception of electric impulses or signals by means of electromagnetic waves. *Webster's Ninth New Collegiate Dictionary* 971 (1984) (emphasis added). "Telephone" was defined as "an instrument . . . in which sound is converted into electrical impulses for transmission *by wire*." *Id.* at 1212. Plaintiffs acknowledge that iPhones operate through wireless transmission of radio waves rather than by wire. *See* Dkt. 41 at 13. This plain factual difference strongly supports the conclusion that iPhones fall within the definition of radio equipment.

In addition, although the Washington legislature in 1984 may not have foreseen the widespread consumer use of cellular telephones many years later, it was clearly aware of communication devices that operated using radio waves. The TBPA reflects that

awareness by drawing a clear distinction between the traditional, wire-based telephone network (to which it expressly applies) and wireless, radio-based telecommunications (to which it expressly does not).

This is not to suggest that the TBPA's reference to "radio equipment" encompasses every device that operates using radio waves. Rather, the term is limited by the following qualifying language: "used for land, marine, or air mobile service, or any like service, whether or not it is capable of connecting to a telephone line." RCW 19.130.040.

Defendants argue that "land, marine, or air mobile service" refers only to specialized categories of communication defined in federal regulations. Dkt. 41 at 12 (citing 47 C.F.R. Part 90, *et seq*. (land); 47 C.F.R. Part 80, *et seq*. (marine); 47 C.F.R. Part 87, *et. seq*. (aviation)). However, those are federal regulatory classifications, and the phrase "air mobile" is never used. More significantly, nothing in the TBPA incorporates or depends on those specific federal distinctions. Instead, TBPA's exemption broadly encompasses "any like service." Cellular phones transmit and receive electromagnetic waves in the same manner as other two-way radio services, and there is no dispute that they operate over land and sea. Although an iPhone may not fit neatly within a single category of land, marine, or air mobile service, its underlying technology more closely resembles radio equipment than a wired telephone handset. The functional equivalence between iPhones and specialized two-way radio equipment is sufficient to place them within the listed categories or, at a minimum, within the classification of "any like service."

Interpreting iPhones as radio equipment is also consistent with the statute's regulatory purpose. The TBPA did not purport to regulate all communication devices indiscriminately. *See* RCW 19.130.040 (excluding radio equipment "whether or not such equipment is capable of interconnection by manual or automatic means to a telephone line"). Rather, it was enacted to address equipment used in the post-monopoly AT&T marketplace, where consumers, for the first time, had expanded choices in purchasing wired, landline telephone equipment. The TBPA has been in effect for more than forty years. The cellular communications technology to support modern cellular phones was not developed until the early 1990s. *See In re Qualcomm Antitrust Litig.*, No. 17-MD-02773-LHK, 2018 WL 4110498, at *1–2 (N.D. Cal. Aug. 29, 2018). The first iPhone was not introduced until 2007. Dkt. 27 at 17. If the legislature intended the TBPA's disclosure requirements to apply to all types of telecommunication devices, including those operating through radio waves, it could have amended the statute to say so; it has not.

The Court concludes that iPhones are radio equipment within the meaning of the TBPA and are therefore not subject to the TBPA's disclosure requirements.

**3. An iPhone is not a telephone handset or keyset**

Even if the TBPA's exemption for radio-based mobile communications device did not apply to an iPhone, the Court concludes that it is not a "telephone handset or keyset" to which the TBPA applies. The TBPA requires that "[a]ny person offering for sale or selling new or reconditioned *telephone handsets or keysets* . . . shall clearly disclose prior to sale" certain information. RCW 19.130.020 (emphasis added).

Defendants contend that "telephone handsets or keysets" refers only to "landline telephone equipment that was in widespread use at the time and which was previously available for purchase only from a monopoly provider." *Id.* at 17. They contend it could not have included the modern smartphone, which, at the time the TBPA was enacted, was still years away from mass availability and use. *Id.* Defendants argue that this interpretation is further supported by the TBPA's legislative history, which refers to telephone products as "customer premises equipment" as well as the TBPA's other statutory provisions, which reference a "telephone network" and "pulse" or "tone" "signaling methods." *Id.* at 17–18; *see* RCW 19.130.020.

Plaintiffs respond that iPhones "plainly" qualify as "telephone handsets or keysets." Dkt. 41 at 8. Plaintiffs emphasize that the TBPA is a remedial consumer protection statute and therefore must be interpreted liberally to effectuate its purpose of protecting consumers in the purchase of telephone equipment. *Id.* They argue that an iPhone is at its core, a sophisticated telephone handset. *Id.* at 9.

Undefined statutory terms are generally interpreted according to their "ordinary contemporary, common meaning at the time" of the time of enactment. *Wisconsin Cent. Ltd v. United States*, 585 U.S. 274, 284 (2018); *see also Connell v. Lima Corp.*, 988 F.3d 1089, 1097 (9th Cir. 2021) (interpreting medical biomaterials statute and noting that statutory terms are given their "contemporary, common meaning existing at the time [the legislative body] enacted the statute").

Defendants rely on Merriam-Webster's 2025 online dictionary definition of "handset" as "a combined telephone transmitter and receiver mounted on a handheld

device," to argue that an iPhone is a handset because it performs the same core function. Dkt. 41 at 15 (citing Merriam-Webster Dictionary, HANDSET, available at https://www.merriamwebster.com/dictionary/handset (last visited Aug. 21, 2025)). However, that was not the definition of "handset" when the legislature passed the TBPA. Merriam-Webster's 1984 edition, published the same year as the TBPA's enactment, defines "handset" as "a combined telephone transmitter and receiver mounted on a **handle**." *Webster's Ninth New Collegiate Dictionary* 551 (1984) (emphasis added). A "handle" is a feature characteristic of a traditional landline telephone, and not a feature applicable to a portable handheld cellular device.

The Court must also give effect to the modifying term "telephone." *See Leocal v. Ashcroft*, 543 U.S. 1, 12 (2004) (Courts must generally "give effect to every word of a statute wherever possible."). As mentioned above, in 1984, "telephone" was defined as "an instrument . . . in which sound is converted into electrical impulses for transmission by wire." *Webster's Ninth New Collegiate Dictionary* 1212 (1984). Today, Merriam-Webster defines "telephone" as a device by which sound . . . is converted into electrical impulses and transmitted (*as by wire or radio waves*) to one or more specific receivers." *Merriam-Webster Dictionary*, TELEPHONE, available at https://www.merriamwebster.com/dictionary/telephone (last visited Feb. 12, 2026) (emphasis added). It is unsurprising that a 1984 dictionary definition for "telephone" would rely on transmission by wire. At that time, as Plaintiffs acknowledge, cellular phones were still "nascent," and smartphones "decades away." Dkt. 41 at 15. It follows that the TBPA's reference to "telephone handsets or keysets" necessarily contemplated

traditional landline telephone equipment, which was the only form of consumer telephone technology widely in use at the time.

Plaintiffs argue that the Court should extend the statute's scope to include later developed technology, including iPhones, by looking to the "the spirit and intent of the law, not just its literal or historical meaning." *Id.* (citing *Nationscapital Mortg. Corp. v. State Dep't of Fin. Institutions*, 133 Wn. App. 723, 737, 137 P.3d 78 (2006)). In their view, excluding iPhones from the term "telephone handset" simply because it is more technologically advanced would elevate form over substance. *Id.* at 16. They contend that the statute should be liberally construed to effectuate what they characterize is a "remedial consumer protection statute." *Id.* at 11.

The Court's objective in statutory interpretation is to give effect to legislative intent. It does so by examining the TBPA's plain language, the statutory context, and related statutory provisions. *Ervin*, 169 Wn.2d at 820 (Plain meaning is derived from the context of the statute, related provisions, and the larger statutory scheme.). Nothing in the TBPA indicates that the legislature intended the statute to be construed liberally to benefit only the consumer. Unlike the CPA enacted two decades earlier, the TBPA contains no statutory directive requiring liberal construction. *See* LAWS OF 1961, ch. 216, § 20 (To "protect the public and foster fair and honest competition, . . . this act shall be liberally construed that its beneficial purposes may be served."). In addition, the legislature expressly intended the TBPA to benefit both sellers and consumers; it was not a purely consumer-focused statutory scheme. RCW 19.130.010 (The "[d]isclosure of certain product information will benefit both buyers and sellers."); *see also* Floor Speech

S.S.B. 4560, Dkt. 30-1 at 27 ("Bill represents a reasoned balance between the needs of consumers to have adequate information about telephone equipment, and the needs of sellers for simple disclosures."); *cf Carlsen v. Global Client Solutions*, LLC, 171 Wn.2d 486, 498, 256 P.3d 321 (2011) ("[A]s a remedial statute . . . the debt adjusting statute should be construed liberally in favor of the consumers it aims to protect."). Nonetheless, even assuming the TBPA may be characterized as remedial, that label does permit the Court to disregard the statute's plain language. *See Campbell & Gwinn*, 146 Wn.2d at 9–10; *United States v. Sturm*, 673 F.3d 1274, 1279 (10th Cir. 2012) (noting that we "must 'ordinarily resist reading words or elements into a statute that do not appear on its face.'" (quoting *Bates v. United States*, 522 U.S. 23, 29 (1997)).

The TBPA's text makes clear that the legislature intended the statute to apply to traditional telephone handsets or keys: combined transmitter and receiver devices mounted on a handle, in which sound is converted into electrical impulses for transmission by wire. Nothing in the statutory language suggests an intent to regulate an entirely different telephonic communication technology that relies on radio-based transmission rather than wired connections.

Although the Court finds the TBPA unambiguous, even if ambiguity existed, the legislative history supports the same result. The TBPA's legislative history repeatedly refers to telephone handsets or keysets as "customer premises equipment." *See* S.B. Rep. on ENGROSSED SUBSTITUTE S.B. 4560 (Wash. 1984), Dkt. 30-1 at 21 ("Sales of telephone customer premises equipment are now competitive"); *id.* ("Customer premises equipment is equipment used to originate and terminate telephone calls such as telephone

sets and switchboards."); *id.* ("The Legislature finds deregulation provides consumers with the opportunity to purchase a variety of customer premises equipment and that disclosure of product information will aid consumers in making choices."). The Court agrees with Defendants that "[n]owhere in these relevant materials is there a single reference, implied or otherwise, suggesting that the statute was intended to evolve in perpetuity to cover devices with 'far greater complexities for consumers than landline telephones.'" Dkt. 46 at 7 (citing Dkt. 41 at 8).

This conclusion is reinforced by the TBPA's pre-sale disclosure requirement, which mandates notice of whether the equipment uses "pulse, tone, pulse-or-tone, or other signaling methods." RCW 19.130.020. Defendants argue that the "catch-all" phrase "other signaling methods" anticipates future advancements in telephone signaling such as sophisticated digital signaling methods like LTE or 5G. Dkt. 41 at 18. However, the signaling disclosure requirement makes sense only in the context of landline telephone equipment. The House Bill Report explains that "[t]elephone equipment and its capabilities are complex. . . . It is quite possible to buy a telephone that won't work in one's house because of a mismatch of capabilities." H.B. Report on E.S.S.B. 4560, Dkt. 30-1 at 57; *see* Floor Speech S.S.B. 4560, Dkt. 30-1 at 27 (Facts that telephone buyers "most need to know," include the "type of signaling method the telephones uses."); *W. Radio Services Co. v. Qwest Corp.*, 678 F.3d 970, 983 (9th Cir. 2012) ("Dual Tone Multi–Frequency ('DTMF') and Dial Pulse signaling, [] are forms of in-band signaling associated with older touch-tone and rotary-dial telephones."). Cellular phones, such as iPhones, do not present the same compatibility concerns that existed for landline

telephones in 1984. Cell phones are not restricted to in-home use, nor are they constrained by the signaling methods of a specific wired network.

The Court concludes that the TBPA is unambiguous: iPhones are not telephone handsets or keysets within the meaning of the TBPA.

**D. Plaintiffs fail to state a CPA claim**

Plaintiffs' CPA claim is premised on a predicate violation of the TBPA. *See* Dkt. 20 at 19. To prevail on a CPA claim, a plaintiff must prove: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). Plaintiffs assert that Defendants committed an unfair or deceptive practice by omitting information required by the TBPA in their sale of iPhones. Dkt. 20 at 19. Because the Court concludes there can be no TBPA violation, Plaintiffs' CPA violation necessarily fails.

Defendants' motion to dismiss Plaintiffs' CPA claim is **GRANTED**.

## II. ORDER

The Court concludes that iPhones are radio equipment, not telephone handsets or keysets, within the meaning of the TBPA. Defendants' motion to dismiss Plaintiffs TBPA and CPA claims, Dkt. 27, is **GRANTED**.

Because Plaintiffs cannot remedy the flaws in their claims through future amendment, the dismissal is with prejudice and without leave to amend.

**IT IS SO ORDERED**.

//

Dated this 23rd day of February, 2026.

BENJAMIN H. SETTLE
United States District Judge